OPINION OF THE COURT
Bertram R Gelfand, S.
This is a motion to fix the nonresident estate tax pursuant to section 960 of the Tax Law upon real property located at 901 Walton Avenue, Bronx, New York. Decedent died on October 11, 1973, a resident of the State of Florida. Petitioner and the State Tax Commission take opposing positions, both as to the proper method to compute the tax and the values to be used in the computation.
In Schedule A of the Federal estate tax return, as originally filed, the real property was listed as having a value of $274,-953. A deduction for the mortgage on the real property in the sum of $199,953 was reported on Schedule K of the return. After an audit, the total gross estate agreed upon was $437,687.02 and the total deductions agreed upon were $238,057.06. With the exception of the real property and an automobile, having a Florida situs and a value of $1,500, all of the assets of the estate consisted of intangible personal property. After the closing letter from the Internal Revenue Service was received by the estate, it is alleged that an amended Federal estate tax return was filed in which the real property was reported as having a value of $66,881, the total gross estate was reported at a value of $228,977.02 and the total deductions were listed at $29,347.06. Under the amended return, the Federal estate tax liability is identical with the tax set forth in the closing letter because the amended return merely decreased both the gross estate and the deductions by $208,710.
The primary issue is whether the value of the intangible personal property may be considered in determining the rate of the tax upon the real property. Subdivision (b) of section 960 of the Tax Law in effect as of the date of the decedent’s death provided that a nonresident’s estate tax should be computed as follows: "The tax imposed under subsection (a) *950 shall be an amount which bears the same ratio to the tax that would be due, if the decedent had been a resident, under subsection (a) of section nine hundred fifty-two as reduced by the credits allowable under sections nine hundred fifty-eight and nine hundred fifty-nine, as (i) the value of all real and tangible personal property having an actual situs in New York state, the transfer of which is subject to tax under subsection (a) of this section, bears to (ii) the value of his New York gross estate determined as if he had been a resident.” Based upon subdivision (b) of section 960 of the Tax Law the State Tax Commission computed the tax in this estate as follows:
"New York gross estate $437,687.02*
New York estate tax deductions 238,057.06
New York taxable estate 199,629.96
New York gross estate tax 5,985.20
Credits against estate tax 200.00
New York net resident estate tax 5,785.20
New York City estate tax -0-
Total nonresident estate tax 274,953.00 (NY real estate) 3,634.23”
437,687.02 (NY gross estate)
Petitioner contends that the reciprocity statute, section 960-a of the Tax Law and section 3 of article XVI of the New York Constitution, dictate that a nonresident’s gross estate may be determined by only including the real property or tangible personal property located in New York. The pertinent provisions of section 960-a of the Tax Law relied upon by petitioner provides: "The tax imposed by this article in respect of personal property (except tangible personal property having an actual situs in this state) shall not be payable if the transferor is a resident of a state or territory of the United States the laws of which, at the time of the transfer, contained a reciprocal provision under which nonresidents were exempted from transfer taxes or death taxes of every character in respect of personal property (except tangible personal property having an actual situs therein) provided the state or territory of residence of such nonresident allowed a similar exemption to residents of the state or territory of residence of such transferor.”
*951 The formula used by the State Tax Commission in computing the nonresident estate tax under both section 960 of the Tax Law and its predecessor, section 249-p of the Tax Law, has the imprimatur of court approval (Matter of Drexel, 280 NY 817; Matter of Harding, 279 NY 142; Matter of Lagergren, 276 NY 184; Matter of Meacle, 46 Misc 2d 301; Matter of O’Flyn, 193 Misc 109). Petitioner contends that the enactment of the reciprocity statute by chapter 640 of the Laws of 1973, effective June 11, 1973, overrides prior court approval or any interpretation of section 960 of the Tax Law which would permit considering the value of intangible personal property in determining the nonresident estate tax. This position cannot be sustained. Section 1 of chapter 640 of the Laws of 1973 provides that the purpose of enacting the reciprocity statute was not to change the existing taxation of nonresident estates which were already exempted from taxation on intangible personal property under section 3 of article XVI of the New York State Constitution, but instead, the purpose of the reciprocity statute was to make it easier for New York residents to receive a reciprocal exemption from States which required that the exemption be provided for in a statute rather than in a Constitution. Moreover, when section 960 of the Tax Law was amended in 1977 the basic formula for computing a nonresident’s estate tax contained therein remained the same. Accordingly, it is determined that the Legislature did not intend by the passage of the reciprocity statute in 1973 to change the formula for computing the estate tax of a nonresident.
The pertinent portion of section 3 of article XVI of the New York State Constitution relied upon by petitioner provides: "Moneys, credits, securities and other intangible personal property within the state not employed in carrying on any business therein by the owner shall be deemed to be located at the domicile of the owner for purposes of taxation, and, if held in trust, shall not be deemed to be located in this state for purposes of taxation because of the trustee being domiciled in this state, provided that if no other state has jurisdiction to subject such property held in trust to death taxation, it may be deemed property having a taxable situs within this state for purposes of death taxation.”
The formula for taxing nonresidents has been sustained by the Court of Appeals against attacks that it violates the Constitution of the United States (Matter of Drexel, supra; *952 Matter of Harding, supra; Matter of Lagergren, supra). However, none of the reported cases appear to directly deal with the issue of whether this formula for computing a nonresident’s estate tax violates the State Constitution. There is no language in section 3 of article XVI of the State Constitution that prohibits considering the value of a nonresident’s intangible personal property in determining the rate of the estate tax upon real property or tangible personal property located in New York. Under the formula of section 960 of the Tax Law a nonresident estate is not directly taxed on intangible personal property and the amount of the tax imposed on the real or tangible personal property could never exceed, or even equal, the value of that property located in New York. The following language in Matter of Lagergren (276 NY 184, 190, supra) (quoted from Atlantic & Pacific Tea Co. v Grosjean, 301 US 412) is relevant: "The measure of the exaction is the number of units of the chain within the State, — a measure sanctioned by our decisions. The rate of tax for each such unit is fixed by reference to the size of the entire chain. In legal contemplation the state does not lay a tax upon property lying beyond her borders nor does she tax any privilege exercised and enjoyed by the taxpayer in other states”.
Here, as in Matter of Lagergren (supra) "the rate of tax for each such unit” (tangible personal property and real property located in New York) "is fixed by reference to the size of the entire chain” (the value of the entire estate less tangible personal property and real property having a situs outside of New York). Accordingly, it is determined that the formula advanced by the respondent pursuant to section 960 of the Tax Law does not violate the New York State Constitution.
 Petitioner also contends, that even if the formula advanced by the respondent is correct, that in determining both the New York gross estate and the value of the real property located in New York, the lower values set forth in the amended Federal return rather than the values upon which the Federal closing letter was received should be used. If the amended return values were used, the tax in this estate would be 29.2%
($66,881.00 \ $228,977.02)
of the tax imposed upon a resident instead of the 62.8% *953 urged by the respondent. Petitioner achieved this reduction in the value of the real property and the gross estate on the amended return by subtracting from the value of the real estate, the mortgage and the other debts incurred in connection with operating the premises. As previously noted, since the petitioner made these subtractions and listed the net value of the real estate in Schedule A of the amended return he did not take a deduction for these items on the amended return.
*952 ($274,953.00 \ $437,687.02)
*953 The parties agree that if the mortgage was without recourse against the decedent, the gross estate on both the Federal and State estate tax return is computed on the value of the property after deducting the mortgage and that if the decedent was personally liable for the mortgage, then the full value of the property must be included in the appropriate schedule and as part of the gross estate and a deduction would be allowed for the amount of the mortgage (Matter of O’Flyn, 193 Misc 109, supra; Federal Tax Regulations, 26 CFR 20.2053-7). However, an issue is raised as to which party is entitled to the presumption created by section 961 of the Tax Law, which provides that the value of any item for New York estate tax purpose shall be the same as the final, Federal determination as to value unless it is established by a preponderance of the evidence that the Federal determination was erroneous. Petitioner contends that the mere filing of an amended return after receiving a closing letter, notwithstanding, that the amendment did not change the tax liability, constituted a final Federal determination as to the values set forth in the amended return. Section 961 (subd [b], par [3]) of the Tax Law provides that a final Federal determination is made within the meaning of that section when a closing agreement is reached pursuant to the Internal Revenue Code. In the instant case the Federal tax remained the same under the amended return because petitioner reduced both the gross estate and the deductions by the same amount. Under these circumstances it would have been pointless for the Internal Revenue Service to make a determination as to the values set forth in the amended return. It appears that the issue to be determined herein was the motivation for the filing of the amended return. It is inconceivable that the Legislature intended, under the circumstances here present, that section 961 of the Tax Law required the State to be prima facie bound by amendments filed to a return after the receipt of a closing *954 letter, when said amendments did not alter the Federal tax liability and were therefore, not subject to any scrutiny nor even be of any concern to the Internal Revenue Service. If in fact the decedent was not personally liable for the mortgage, the petitioner could have established that was the case in this proceeding by submitting the mortgage and the bond or note, which documents would appear to either be in his possession or easily obtainable by him. Moreover, petitioner has failed to cite and the court is not aware of any authority which permits an estate to reduce the gross estate rather than taking a deduction for debts other than a mortgage related to the operation of the real estate. It is determined that petitioner has failed to rebut the presumption that the value of the real property is $274,953, and the value of the gross estate is $437,687.02, the values upon which the closing letter was based.
Accordingly, it is concluded that the formula for computing the tax and the values urged by the respondent are correct. Nevertheless, the counter order fixing the tax submitted by the respondent may not be signed. In computing the New York gross estate, the respondent failed to subtract from the Federal gross estate the value of the car situated in Florida (Tax Law, §§ 954, 956, 960). However, since the car is not included in the New York gross estate, its value may not be considered in computing the New York marital deduction, even though the car passes to the spouse (Tax Law, § 958, subd [e]). The net result of these two changes will be that the taxable estate remains the same (the gross estate and the deductions both being decreased in the same amount). However, the tax will be slightly different because the denominator of the fraction used to compute the percentage of the New York net resident estate tax to be paid by the nonresident must be reduced by the value of the car.

 On the order fixing the tax submitted by the respondent, the figure set forth was $436,687.02, but the arithmetic coupled with the allegations contained on page 2 of the reply affirmation of the respondent’s attorney makes it evident that respondent contends that the correct figure is $437,687.02, the same amount that was listed on the Federal return.